IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

**CHARLES ROBERT BARLOW**                                                **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO. 2:08cv31-MTP**

**FORREST COUNTY SHERIFF'S DEPT., ET AL.**                                **DEFENDANTS**

## OPINION AND ORDER

THIS MATTER is before the court on the Motion for Summary Judgment [79] filed by

the Defendants. Having reviewed the submissions of the parties and the applicable law, the

court finds that the Motion [79] should be granted.

FACTUAL BACKGROUND

Plaintiff Charles Robert Barlow is currently incarcerated at the Federal Correctional

Complex in Beaumont, Texas. Plaintiff, proceeding *pro se* and *in forma pauperis*, filed his

Complaint [1] pursuant to 42 U.S.C. § 1983 on February 7, 2008. Through his complaint and

amended complaint, and as clarified during his *Spears*[1] hearing, Plaintiff alleges claims against

---

[1]*Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). Plaintiff's *Spears* hearing took place
on March 23, 2009. *See* Transcript [62]. While Plaintiff initially requested an omnibus hearing
in this matter, he later filed several motions objecting to the omnibus hearing, claiming in part
that an omnibus hearing would be improper because this is a civil case, and omnibus hearings
are only appropriate in criminal cases. *See* Letter [19]; Motions [48][49][57][58]; Orders
[42][50][59]. In his Response [85] in opposition to the Defendants' Motion for Summary
Judgment [79], Plaintiff makes accusations that the undersigned "took gross advantage of the
unfamiliarity of the plaintiff regarding a 'telephonic omnibus hearing'" and "stifled and curtailed
many evidence gathering capabilities of discovery for this plaintiff." *See* Response [85] at 4-5;
16-17. He further claims that the *Spears* hearing "did nothing more then (sic) **ENTRAP** this
unsuspecting plaintiff my misleading **INTERROGATIONS**, shutting down his Federal
Discovery process, prematurely, likely casting a highly **EXPERIENCED MAGISTRATE** and
**DEFENSE ATTORNEY** from a great law firm . . . against an ordinary country boy who got
caught up in some tragic events that have cost him his freedom . . . ." *Id.* at 22-23 (emphasis in

1

Defendants Forrest County, the Forrest County Sheriff's Department, Sheriff Billy McGee, Sergeant Glen Nobles, Sergeant Ron Taylor, Sergeant Corley, Officer Zach Rooke,[2] Officer Joe Joseph, Sergeant Roper, Nurse Ruby Bunkheila, Sergeant Jamie Fantroy, Officer Perry Price, and Officer Jon Girod[3] for the denial and/or delay of adequate medical treatment, improper conditions of confinement, denial of adequate yard call, denial of access to the law library, destruction of legal property, and violation of his freedom of religion.[4] *See* Scheduling and Case management Order [59]. Regarding the conditions of his confinement at the jail, Plaintiff has complained about virtually every aspect of prison life, as evidenced by the more than 100 grievances attached to his complaints. Plaintiff complains about everything from the amount of toilet tissue provided[5] to the lighting at the jail. The allegations in Plaintiff's complaints occurred while he was a pretrial detainee at the Forrest County Jail (the "Jail") in Hattiesburg, Mississippi,[6] from approximately August 2, 2007 to June 24, 2008.[7]

On September 1, 2009, the Defendants filed their Motion for Summary Judgment [79].

---

original). As evidence by the Transcript [62] of the *Spears* hearing, such accusations are clearly without merit.

[2]Incorrectly identified in Plaintiff's pleadings as Zach "Rooks."

[3]Incorrectly identified in Plaintiff's pleadings as Officer "Gerod."

[4]Plaintiff also named Donell Brannon and Sandi Van Hoost as Defendants in this matter. These Defendants were dismissed from this matter by Order [59] dated March 24, 2009.

[5]In one journal entry kept by Plaintiff, he states "even at cheap hotels, you get more toilet tissue" than one roll every two weeks. Ex. 23 to Pl's Response [82-2].

[6]*See* Tr. [62] at 7.

[7]Plaintiff was initially booked into the Jail on July 12, 2007 by the FBI, was released on July 17, 2007, and rearrested on August 2, 2007. *See* Exs. 2-5 to Motion [79].

Plaintiff filed his Responses [82][85][86] in opposition to the motion on or about October 29, 2009. Defendants filed their Rebuttal [90] on December 22, 2009.[8]

## STANDARD FOR SUMMARY JUDGMENT

This court may grant summary judgment only if, viewing the facts in a light most favorable to the Plaintiff, the Defendants demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995). If the Defendants fail to discharge the burden of showing the absence of a genuine issue concerning any material fact, summary judgment must be denied. *John v. Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *John*, 757 F.2d at 708, 712.

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "Conclusory allegations," *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (emphasis omitted).

---

[8]Defendants also filed a Motion [89] to Strike Plaintiff's Responses to their Motion for Summary Judgment [79]. As discussed below, this Motion [89] should be denied as moot.

ANALYSIS

Plaintiff's claims are before the court pursuant to 42 U.S.C. § 1983.  However, Section 1983 "neither provides a general remedy for the alleged torts of state officials nor opens the federal courthouse doors to relieve the complaints of all who suffer injury at the hands of the state or its officers."  *White v. Thomas*, 660 F.2d 680, 683 (5th Cir.1981).  Rather, "[i]t affords a remedy only to those who suffer, as a result of state action, deprivation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States."  *White*, 660 F.2d at 683 (quoting 42 U.S.C. § 1983).

It is well-settled that Section 1983 does not "create supervisory or *respondeat superior* liability."  *Oliver v. Scott,* 276 F.3d 736, 742 & n.6 (5th Cir. 2002); *see also Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) (citations omitted) ("Under § 1983, supervisory officials cannot be held liable for the actions of subordinates under any theory of vicarious liability."). "To state a cause of action under § 1983, the plaintiff must allege facts reflecting the defendants' participation in the alleged wrong, specifying the personal involvement of each defendant." *Jolly v. Klein*, 923 F. Supp. 931, 943 (S.D. Tex. 1996) (citing *Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992)).  Thus, supervisory prison officials may be held liable for a Section 1983 violation only if they either were personally involved in the constitutional deprivation or if there is a "sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins*, 828 F.2d at 304; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").

Moreover, "[f]or purposes of liability, a suit against a public official in his official capacity is in effect a suit against the local government entity he represents." *Mairena v. Foti*, 816 F.2d 1061, 1064 (5th Cir. 1987) (citations omitted). The Supreme Court has held that in order for a local governmental entity to have liability under Section 1983, a plaintiff must prove that a policy, custom or practice of that local government entity was the "moving force" behind the constitutional violation. *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978). Specifically, in order for Defendants to be liable, Plaintiff must show the existence of a policy, practice or custom of Forrest County "adopted or maintained with objective deliberate indifference to [his] constitutional rights," and he must show that such policy proximately caused the constitutional deprivation of which he complains. *See Grobowski v. Jackson Cty. Public Defenders Office*, 79 F.3d 478, 479 (5th Cir. 1996) (*per curiam*) (citations omitted). Moreover, municipal liability cannot be predicated on a theory of *respondeat superior*, and "[i]solated, unconstitutional actions by municipal employees will almost never trigger liability." *Pietrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citations omitted).

### Denial of Adequate Medical Care

Plaintiff alleges a claim for the denial of adequate medical treatment against Defendant Nurse Ruby Bunkheila ("Nurse Ruby"). Specifically, Plaintiff alleges that he has diabetes and high blood pressure, and that Nurse Ruby denied him adequate medication for his conditions, denied him a proper diabetic diet, and failed to adequately test his blood sugar.

"Prison officials violate the constitutional proscription against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain." *Davidson v. Texas Dep't of Criminal Justice*, 91 Fed. Appx. 963, 964 (5th Cir. 2004) (citing *Wilson v. Seiter*, 501 U.S. 294, 297

(1991)).  Deliberate indifference "is an extremely high standard to meet."  *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)).  The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  The subjective deliberate indifference standard applies to both pre-trial detainees under the Fourteenth Amendment and convicted inmates under the Eighth Amendment.  *Brown v. Attala County Sheriff's Dep't*, No. 1:08CV96-A-A, 2009 WL 1750333, at *3 (N.D. Miss. Jun. 19, 2009) (citing *Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir.1996)).

A prison official may not be held liable under this standard pursuant to Section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference."  *Farmer*, 511 U.S. at 838.   Plaintiff must "submit evidence that prison officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs."  *Davidson*, 91 Fed. Appx. at 965 (quoting *Domino*, 239 F.3d at 756).  "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference, which results in substantial harm."  *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Negligent conduct by prison officials does not rise to the level of a constitutional violation.  *Daniels v. Williams*, 474 U.S. 327, 333-34 (1986).  The Plaintiff is not entitled to the "best" medical treatment available.  *McMahon v. Beard*, 583 F.2d 172, 174 (5th Cir. 1978); *Irby v. Cole*, No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D. Miss. Sept. 25, 2006).

Further, a prisoner's "disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs." *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001).

Defendants argue that Plaintiff's medical claim is without merit and should be dismissed. In support of their motion, Defendants submit the affidavits of Dr. Sherri Flax, Nurse Ruby Bunkheila, and Allen Harrelson. In her affidavit, Nurse Ruby states that all of Plaintiff's medical requests were responded to, that he was given oral medication for his diabetes twice daily, and that his blood glucose level was tested a minimum of once daily, and twice daily when necessary. *See* Ex. 28 to Motion [79]. The medical records support this statement. *See* Ex. 14 to Motion [79].[9] Nurse Ruby further states that on occasion, Plaintiff would refuse medication, his meal tray, and/or getting his blood glucose level checked.[10] *Id.*

Regarding the meal tray, Nurse Ruby explained that the procedure is to send a list of all diabetic inmates to Mr. Allen Harrelson, the kitchen manager at the Jail. Mr. Harrelson then consults with the dietician at Forrest General Hospital regarding limitations and inclusions in the diabetic menu. Nurse Ruby's sworn testimony reflects that to the best of her knowledge, Plaintiff's diet conformed to the recommendations of the dietician. *See* Ex. 28 to Motion [79].

Allen Harrelson's sworn testimony reflects that he is the full-time kitchen manager at the Jail, and that he prepares the meals for the inmates at the Jail. *See* Ex. 29 to Motion [79]. Mr.

---

[9]With the exception of nine days (8/15/07 - 8/16/07, 9/16/07 - 9/18/07, 10/21/07 - 10/22/07, 11/25/07, and 6/18/08), the records reflect that Plaintiff's blood glucose was tested a minimum of once daily during his incarceration at the Jail (August 2, 2007 - June 24, 2008). *See* Ex. 14 to Motion [79]. Plaintiff apparently refused to get tested on June 18, 2008. *Id.*

[10]Plaintiff denies ever refusing medication or testing. However, he admits to refusing a meal tray on occasion, claiming it was not a diabetic tray.

Harrelson states that he consults with the dietician at Forrest General Hospital on a regular basis, and that he himself is an orally treated diabetic and is very familiar with diabetic necessities regarding food and diet. *Id.* Mr. Harrelson states that there is little difference in the diet of a diabetic of Mr. Barlow's level and a non-diabetic. Mr. Harrelson's sworn testimony reflects that Mr. Barlow was given the proper diabetic trays and any required snacks during his incarceration at the Jail, and that there was never an intentional denial of a diabetic diet to Mr. Barlow. *Id.*

In her affidavit, Dr. Sherri Dawn Flax, Chief Executive Officer of Peerless Pathology and Medical Director of Clinical Laboratories at the Regional Medical Center of Memphis, Tennessee, states that she reviewed and evaluated the Plaintiff's medical records. *See* Ex. 21 to Motion [79].[11] Plaintiff was diagnosed with diabetes near or about November 2003.[12] Plaintiff was treated with an oral hypoglycemic agent, his blood glucose and hemoglobin levels were periodically monitored, and his physician recommended that he eat a healthy diet. *Id.*

After his admission to the Jail on or about August 2, 2007, Dr. Flax states that Plaintiff continued to receive oral medication for his diabetes with regular monitoring of his blood glucose. *Id.* This is supported by the medical records. *See* Exs. 14 and 15 to Motion [79]. Dr. Flax states that Plaintiff's blood glucose levels were consistent with levels prior to his incarceration. *See* Ex. 21 to Motion [79].

Dr. Flax observed that Plaintiff did not gain weight while incarcerated at the Jail, but

---

[11]Dr. Flax was retained by Defendants to review and evaluate Plaintiff's medical records. She is board certified by the American Board of Pathology in Anatomic and Clinical Pathology and Hematology. *See* Ex. 21 to Motion [79] and attached curriculum vitae.

[12]Dr. Flax's affidavit actually states that Plaintiff was diagnosed in November 2007. However, based on Plaintiff's medical records and the affidavit read in whole, it appears that this was a typographical error. *See* Ex. 18 to Motion [79], record dated 11/12/03.

actually lost three pounds. *Id.* She stated that based on the medical records, there was no evidence of significant cardiovascular disease, which is accelerated in diabetics without proper management. Further, a stress test performed at Forrest General Hospital during his incarceration at the Jail showed no evidence of ischemia[13] or reperfusion.[14] Dr. Flax opined that Plaintiff's general health was not compromised by his diabetic care, and that his diabetes was well-treated and controlled during his incarceration at the Jail. *Id.* In fact, Dr. Flax opined that Plaintiff's control of his diabetes, as indicated by hemoglobin A1c measurement, was better during incarceration than prior to his incarceration. *Id.*

In his responses and declaration in opposition to Defendants' Motion [79], Plaintiff claims that Defendants' affidavits and exhibits in support of their motion are factually and fatally flawed. Plaintiff claims that he filled out numerous sick call requests regarding his abnormal blood sugar levels with the "intent . . . to consult with Ms. Bunkheila [Nurse Ruby] regarding his high blood sugar levels[,]" the "haphazard way" the tests were performed, and his diet, but that he "was never able to meet with her." Plaintiff's Sworn Declaration [82-2] at 9. He further disputes Defendants' statements and affidavits representing that his blood glucose was tested everyday, and states that when the Accu-Check was not brought around, "someone" would just fill in a number on the Accu-Check sheet. *Id.* Plaintiff refers to his daily personal logs, dated

---

[13]Ischemia is defined as a "deficiency of blood in a part, due to functional constriction or actual obstruction of a blood vessel." *See Dorland's Medical Dictionary for Healthcare Consumers* at http://www.mercksource.com/pp/us/cns/cns_hl_dorlands_split.jsp?pg=/ppdocs/us/common/dorlands/dorland/four/000054968.htm.

[14]Reperfusion is defined as a "restoration of blood flow to an area or part that had had temporary ischemia." *See Dorland's Medical Dictionary for Healthcare Consumers* at http://www.mercksource.com/pp/us/cns/cns_hl_dorlands_split.jsp?pg=/ppdocs/us/common/dorlands/dorland/nine/000629868.htm.

February 18, 2008 through June 24, 2008,[15] in support of this argument.[16]  *See* Plaintiff's Exs. 19-42 [82-2].

Even if Plaintiff's blood sugar was not checked every day and "someone" would sometimes fill in a number on the sheet, this does not establish deliberate indifference by Nurse Ruby.  Indeed, Plaintiff states that "the guards who brought the tester said it cost to (sic) much to check his blood sugar level on a consistent twice daily schedule." *See* Pl's Decl. [82-2] at 10. Nurse Ruby cannot be held vicariously liable for the actions of the guards.  *See Oliver*, 276 F.3d at 742 & n.6; *Thompkins*, 828 F.2d at 304; *Ashcroft*, 129 S. Ct. at 1948.

Further, Plaintiff claims that he sustained blisters on his legs and feet as a result of poor circulation caused by his diabetes.  However, there is no evidence that such blisters were caused by Nurse Ruby's deliberate indifference or that she denied him medical treatment for the blisters. Indeed, Plaintiff states in his declaration that Nurse Ruby "apparently is not aware of the serious blisters that appeared on the bottom of my feet and the medication that I received for the pain in my left leg." *See* Plaintiff's Declaration [82-2] at 10.  The record reflects that Plaintiff was treated for the blisters on his feet and his leg pains.  *See* Pl's Exs. 56- 63 [82-3].

Plaintiff denies receiving a diabetic tray and/or disagrees with the food items on the

---

[15]The daily logs actually go through July 4, 2008, but Plaintiff was transferred from the Jail on June 24, 2008.  Plaintiff claims that all of his records predating February 2008 were taken during a shakedown.  Tr. [62] at 27.

[16]During the time period February 18, 2008 through June 24, 2008, Plaintiff's personal logs indicate that his blood sugar was not tested on ten occasions.  *See* Plaintiff's Exs. 19-42 [18-2].  Additionally, sometimes the readings recorded by Plaintiff and the readings reflected on the Accu-Check Sheet differ.  *See* Plaintiff's Exs. 19-42 [18-2]; Defendants' Ex. 14 to Motion [79].

diabetic trays that were given to him. The record reflects that Nurse Ruby followed the procedure to have Plaintiff placed on a diabetic diet, and that he was in fact issued diabetic trays. *See* Exs. 28-29 to Motion [79].[17] The fact that Plaintiff disagreed with the contents of the diabetic trays does not establish deliberate indifference on the part of Nurse Ruby. Indeed, even if Mr. Harrelson was negligent in choosing the foods for the diabetic tray, it does not constitute deliberate indifference, especially on the part of Nurse Ruby. *See Daniels*, 474 U.S. at 333-34 (holding that negligent conduct by prison officials does not rise to the level of a constitutional violation); *see also Dobbs v. Canteen Catering Serv*., NO. 4:07CV190-P-B, 2008 WL 1805748, at *4 (N.D. Miss. Apr. 18, 2008) (dismissing prisoner's claim that he was denied a diabetic diet) (citing other cases).

Based on the foregoing Plaintiff has failed to show that Nurse Ruby was deliberately indifferent to a serious medical need. *See Davidson*, 91 Fed. Appx. at 964. The record reflects that Plaintiff's blood glucose was checked at least once daily, that he was given oral medication for his diabetes and other conditions, and that he was ordered a diabetic food tray. *See* Exs. 14-15, 21, 28-29 to Motion [79]; Pl's Decl. [82-2] at 18. The fact that Plaintiff's blood glucose was not checked as often as he would have liked, that he disagreed with the dosage and/or timing of his medication, or that he disagreed with the contents of his diabetic tray does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292; *McMahon*, 583 F.2d at 174; *Irby*, 2006 WL 2827551, at *7 (stating that prisoner plaintiffs were not entitled to the "best" medical treatment available)*; Daniels*, 474 U.S. at 333-34 (holding that negligent conduct by prison officials does not rise to the level of a constitutional violation); *Davidson*, 91 Fed. Appx. at 965

_____

[17]Plaintiff acknowledges that his food trays were labeled "diabetic tray." *See* Plaintiff's Declaration [82-2] at 18.

(citing *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir.1999)) ("Unsuccessful medical treatment, ordinary acts of negligence, or medical malpractice do not constitute a cause of action under § 1983."); *Bennett v. Louisiana ex rel. Dep't Of Pub. Safety and Corr.*, No. 07-31189, 2009 WL 102080, at *4 (5th Cir. Jan. 15, 2009) (affirming dismissal of plaintiff's wrongful death claim against prison officials, reasoning "[w]hile the Appellees may very well have exercised poor medical judgment in not performing additional tests on [the deceased prisoner], [plaintiff] has not shown that their actions rise to the level of deliberate indifference").                    .

To the extent Plaintiff alleges claims against Nurse Ruby in her official capacity, which would in effect be a claim against Forrest County, Plaintiff's claims fail as a matter of law. As stated above, there is no respondeat superior liability under Section 1983. *See supra*, *Oliver,* 276 F.3d at 742 & n.6. Further, Plaintiff has failed to allege, much less demonstrate that Forrest County implemented a policy, custom or practice that was the "moving force" behind the alleged constitutional violation. *See Monell*, 436 U.S. at 694. Plaintiff's disagreement with the medical treatment provided does not amount to a constitutional violation. *See Norton*, 122 F.3d at 292. Accordingly, Nurse Ruby is entitled to judgment as a matter of law as to Plaintiff's medical claims, in both her individual and official capacities.

### **Conditions of Confinement**

Plaintiff alleges a claim for inadequate living conditions against Forrest County, the Forrest County Sheriff's Department, and Sheriff Billy McGee. Specifically, Plaintiff claims that the Jail is overcrowded, he was forced to sleep on a dirty mat on the floor, there was mold and mildew on the walls of the Jail, he was forced to stand outside in inclimate weather during shakedowns for hours at a time, he was forced to live in a dangerous/unsafe environment (due to alleged lack of fire alarms and problems with electrical wiring and lighting), sewage problems,

he was given inadequate food, and that he was denied a special dietary tray for his diabetes. Plaintiff alleges that the above living conditions resulted in mental distress and anguish; the mold and mildew and dirty mat caused him to have allergy problems; and standing outside during the cold weather complicated/aggravated his diabetic and high blood pressure conditions and caused him to develop a nerve ending disorder in his legs.

"The constitutional rights of a pretrial detainee . . . flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). Thus, conditions of confinement may "constitute deprivations of liberty without due process if they amount to punishment of the detainee." *Mayfield v. Ellett*, 102 F.3d 549 (5th Cir. 1996) (quoting *Harris v. Angelina County*, 31 F.3d 331, 334 (5th Cir.1994)). "A pretrial detainee's due process rights are said to be as least as great as the Eighth Amendment protections available to a convicted prisoner." *Hare*, 74 F.3d at 639 (internal quotations and citations omitted).

The Fifth Circuit applies the *Bell*[18] test when evaluating a pretrial detainee's challenges to "general conditions, practices, rules, or restrictions of pretrial confinement." *Mayfield v. Ellett,* 102 F.3d 549, 1996 WL 670432, at *5 (5th Cir. 1996); *see also Hare*, 74 F.3d at 643; *Grabowski v. Jackson County Pub. Defenders Office*, 47 F.3d 1386, 1392 (5th Cir. 1995). Under the reasonable relationship test set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979), "a pretrial detainee cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate governmental purpose." *Hare*, 74 F.3d at 640. However, "the Constitution is not concerned with a *de minimis* level of imposition on pretrial detainees." *Collins v. Ainsworth*, 382 F.3d 529,

---

[18]*Bell v. Wolfish*, 441 U.S. 520 (1979).

540 (5th Cir. 2004), *aff'd*, 177 Fed. Appx. 377 (5th Cir. Dec. 21, 2005), *cert. denied*, 547 U.S. 1055 (2006) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)); *see also Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989) (holding that the Constitution does not protect against conditions of confinement "which cause mere discomfort or inconvenience"); *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982) (serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences.").

However, when a pretrial detainee challenges a jail official's "episodic acts or omissions, the *Bell* test is inapplicable, and hence the proper inquiry is whether the official had a culpable state of mind in acting or failing to act." *Mayfield,* 1996 WL 670432, at *5 (quoting *Hare,* 74 F.3d at 643) (adopting a standard of subjective deliberate indifference as the measure of culpability for pretrial detainees' claims of episodic acts or omissions)). Thus, liability for an episodic act or omission attaches only when a prison official's failure to act amounts to subjective deliberate indifference to a pretrial detainee's rights. *See Edward v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000); *Hare*, 74 F.3d at 648.

"Overcrowding of persons in custody is not *per se* unconstitutional." *Collins v. Ainsworth,* 382 F.3d 529, 540 (5th Cir. 2004) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-50 (1981)). Rather, the constitution only prohibits the "imposition of conditions of confinement on pretrial detainees that constitute 'punishment.'" *Collins*, 382 F.3d at 540 (quoting *Hamilton v. Lyons*, 74 F.3d 99, 103 (5th Cir. 1996)).

In his affidavit, Sheriff Billy McGee recognizes that there are problems with the Jail due to the age of the facility and its capacity level, but states that there are no problems that rise to the level of deprivation of basic human needs. *See* Ex. 22 to Motion [79]. Sheriff McGee's sworn testimony establishes that Forrest County is currently trying to rectify the problems and

that a new jail facility is well under construction. Sheriff McGee states that he regularly inspects the Jail, and at no time are inmates required to live in conditions under which they are denied their basic human needs. *Id.*

Plaintiff has failed to show that the overcrowding of the Jail amounted to punishment and was not reasonably related to a legitimate governmental purpose. *See Collins*, 382 F.3d at 545-46 (holding that while the jail exceeded capacity during the plaintiffs' stay, the plaintiffs failed to show that the alleged "unsuitable conditions" amounted to punishment in violation of the Fourteenth Amendment[,]" and reasoning that the inability to get judges to the jail on a Sunday combined with the bad weather conditions were "legitimate, practical concerns reasonably related to the overcrowding conditions . . . [that] easily [met] the deferential, rational basis *Bell* test"); *see also Hye v. Broadus*, No. 1:08-cv-220-HSO-JMR, 2009 WL 3259130, at *5 (S.D. Miss. Oct. 8, 2009) (holding that plaintiff "failed to establish that the overcrowding at the JCADC is not reasonably related to a legitimate governmental interest such as balancing an overwhelming number of detainees with a finite amount of available housing").

Plaintiff complains that he was forced to sleep on a dirty mat on the floor. Plaintiff does not enjoy a constitutional right to an elevated bed. *See Mann v. Smith*, 796 F.2d 79, 85 (5th Cir. 1986) (stating that the court was unaware of any authority for the proposition that the Constitution requires elevated beds for prisoners); *Hye*, 2009 WL 3259130, at *9 (holding that pretrial detainees do not have a constitutional right to an elevated bed). Plaintiff testified that he suffered no physical injuries as a result of sleeping on the mat. Tr. [62] at 18. Plaintiff has failed to establish that requiring him to sleep on a mat on the floor amounted to punishment and was not reasonably related to the legitimate governmental purpose of finding a place for all inmates to sleep in a Jail that was over-capacity. *See Collins*, 382 F.3d at 545-46.

Plaintiff's claim that the shower and cell he is forced to share with other inmates are unsanitary and covered in mold and mildew also fails to rise to the level of a constitutional violation. Sheriff McGee and Sergeant Ron Taylor's sworn affidavits reflect that the inmates are given cleaning equipment chemicals every morning and they are required to clean their individual cells and showers. *See* Ex. 22-23 to Motion [79]. Plaintiff disputes that he was given cleaning materials. Tr. [62] at 19-20. Plaintiff testified that he suffered allergy problems as a result of the dust and dirt, but suffered no physical injury as a result of the mold and mildew. *Id.* at 19. Plaintiff has failed to show that such conditions amount to punishment and are not reasonably related to a legitimate governmental purpose. *See Lee v. Hennigan*, 98 Fed. Appx. 286, 287-88 (5th Cir. 2004) (affirming dismissal of claim regarding the unsafe condition of shower facilities, where plaintiff failed to allege "the shower design [was] punitive and not reasonably related to a legitimate governmental objective"); *see also Carter v. Lowndes County*, 89 Fed. Appx. 439, No. 03-60188, 2004 WL 393333, at *1 (5th Cir. Jan. 23, 2004) (dismissing conditions of confinement claim for solitary confinement in an unsanitary cell and denial of shower privileges, where plaintiff failed to show that conditions amounted to punishment and were not incident to some other legitimate governmental purpose); *Mahmoud v. Bowie*, 234 F.3d 29, No. 99-31255, 2000 WL 1568178, at *2 (5th Cir. Sept. 14, 2000) (dismissing plaintiff's claim for unsanitary shower conditions, holding that such claim was conclusional and/or *de minimis* and did not rise to the level of a constitutional violation). "The fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment." *Lee*, 98 Fed. Appx. at 288 (citing *Bell*, 441 U.S. at 537, 539).

Plaintiff's allegations regarding sewage back-up in the Jail fail to state a constitutional

violation.  The sworn testimony of Sheriff McGee and Forrest County Maintenance Supervisor Cutis Elliot reflect that inmates routinely fill the toilets with contraband, tissue and linens, intentionally causing the plumbing to backup.  *See* Exs. 22 and 30 to Motion [79].  When this occurs, Sheriff McGee and Mr. Elliot state that the issue is promptly dealt with and that at no time are prisoners allowed to remain in areas with backed up sewage; the cell block is evacuated, maintenance is called and Mr. Elliot initiates the repairs and clean-up.  *Id*.  Plaintiff disputes that the situations were promptly dealt with; instead, he claims the inmates were given a mop and a bucket to clean up the mess.  Tr. [62] at 22.  Plaintiff has failed to show that such conditions amounted to punishment and are not reasonably related to a legitimate governmental purpose. *See Lee*, 98 Fed. Appx. at 287-88.

Plaintiff's allegations regarding exposed wires, faulty lighting, the lack of proper fire alarms and sprinkler systems, and a dangerous/unsafe environment in the Jail fail to amount to a constitutional violation.  The sworn testimony of Sheriff McGee and Curtis Elliot reflect that the Jail is regularly inspected by maintenance, and that the County supervisor is at the Jail daily, and that electrical, plumbing, and other problems are regularly inspected and promptly repaired, particularly when a specific problem is brought to the attention of staff by inmates.  *See* Exs. 22 and 30 to Motion [79].  The affiants further state that inmates sometimes tear town light fixtures, but they are constantly and consistently repaired or replaced.  *Id.*  Plaintiff testified that he suffered no physical injury as a result of the exposed wires, the faulty lighting or the lack of sprinkler systems or fire alarms. Rather, he was concerned for his safety and/or these conditions caused him mental anguish and inconvenience.  Tr. [62] at 21-23.  Plaintiff has failed to show that the alleged conditions amounted to punishment and are not reasonably related to a legitimate governmental purpose.  *See Lee*, 98 Fed. Appx. at 288 (citing *Bell*, 441 U.S. at 537, 539) ("The

fact that a detention interfered with a prisoner's desire to live as comfortably as possible does not convert the conditions of confinement into punishment."); *Hye*, 2009 WL 3259130, at *4 ("Plaintiff's allegations regarding the alleged lack of fire safety training are merely speculative and fail to state a constitutional violation."). As previously stated, Sheriff McGee recognizes that the Jail has problems due to its age and capacity level; however, Forrest County is currently trying to rectify the problems and a new jail facility is well under construction. *See* Ex. 22 to Motion [79].

Plaintiff alleges he was forced to stand outside in the cold rain wearing basically a "paper gown" for two and a half hours in January 2008 for a shakedown. He testified that he understands the Jail's policy for shakedowns, but claims the officials could have made the inmates stand inside. He claims that he told the Jail officials that he was a diabetic and had nerve problems in hid legs, but his complaints were ignored. As a result, he claims that he had to be put on medication for a nerve ending disorder, although the doctor could not say one way or the other whether the disorder was caused by the January 2008 incident. Tr. [62] at 20-21. Plaintiff has failed to show that this incident amounted to punishment and was not reasonably related to a legitimate governmental purpose, such as security. *See Hare*, 74 F.3d at 640; *Collins*, 382 F.3d at 540.

Finally, Plaintiff complains that he was served inadequate food and/or denied a diet tray. Plaintiff testified that the food he was served at the Jail was "terrible." Tr. [62] at 23. He claims the food was moldy and sometimes contained insects, metal shavings, bones, etc. *Id.* He claims the food he was given caused his diabetes to be "out of control" and it has taken him more time to "get back to where he should be." *Id.* Plaintiff has failed to show that the food he was served amounted to punishment was not reasonably related to a legitimate governmental purpose, such

as trying to serve inmates adequate food based on budget and capacity level.[19]  *See Hare*, 74 F.3d

at 640; *Collins*, 382 F.3d at 540; *Mahmoud v. Bowie*, 234 F.3d 29, No. 99-31255, 2000 WL

1568178, at *2 (5th Cir. Sept. 14, 2000) (dismissing plaintiff's claim that food was unappetizing,

holding that such claim was conclusional and/or *de minimis* and did not rise to the level of a

constitutional violation).

To the extent Plaintiff alleges any of the above claims as episodic acts against Sheriff

McGee, the court finds that Plaintiff has failed to establish that Sheriff McGee acted with the

requisite subjective deliberate indifference.  *See Hare,* 74 F.3d at 643) (adopting a standard of

subjective deliberate indifference as the measure of culpability for pretrial detainees' claims of

episodic acts or omissions); *Edward*, 209 F.3d at 778.

While Plaintiff disputes literally every line of every affidavit submitted by Defendants, he

fails to offer competent summary judgment evidence to raise a genuine issue of material fact as

to whether his constitutional rights were violated.  Accordingly, Defendants are entitled to

summary judgment on these claims.

### Denial of Adequate Yard Call

Plaintiff alleges that Defendants Sergeant Roper, Sergeant Ron Taylor, and Sergeant

Glen Nobles denied him adequate yard call, which deprived him of adequate exercise.  Plaintiff

claims that he has diabetes and hypertension, and that he needs to exercise regularly because of

these conditions.  He claims that these Defendants knew of his condition, yet still ignored or

refused his requests for yard call.  He claims that when he would ask the guards about yard call,

they would reply that they were "too busy" or "[didn't] have enough people on staff."  Tr. [62] at

---

[19]Plaintiff's allegations regarding the denial of a diabetic tray are discussed in further
detail above under "Denial of Adequate Medical Care."

17. As a result, he claims his diabetic condition worsened.

The Fifth Circuit has held that neither prisoners nor pretrial detainees have a *per se* constitutional right to outdoor exercise or recreation." *Callicutt v. Panola County Jail*, 200 F.3d 816, 1999 WL 1095663, at *3 (5th Cir. 1999); *see also Jones v. Diamond*, 594 F.2d 997, 1013 (5th Cir.1979)). The constitution does not require "that inmates at a county jail be permitted outdoor recreation-only that 'in matters of physical health [ ] that the jailer must not be deliberately indifferent to the serious needs of his prisoners.'" *Busby v. Thompson*, No. 2:07CV217-M-S, 2008 WL 2942133, at *2 (N.D. Miss. Jul. 28, 2008) (quoting *Jones v. Diamond*, 594 F.2d 997 (5th Cir.1979)).

In support of their motion, Defendants submitted the affidavits of Sergeant Glen Nobles, Sergeant Ron Taylor, and Sergeant Billy McGee. The sworn statements of these affiants reflect that inmates at the Jail are offered yard call twice weekly as weather permits. *See* Exs. 22-24 to Motion [79]. In addition to factors such as weather and overcrowding, Sergeant Nobles, Sheriff Magee and Sergeant Taylor state that due to the nature of the charges against Plaintiff,[20] his

---

[20]Plaintiff was found guilty of violating 18 U.S.C. § 1470, transfer of obscene material to minors, and 18 U.S.C. § 2422(b), coercion and enticement. Section 1470 provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, knowingly transfers obscene matter to another individual who has not attained the age of 16 years, knowing that such other individual has not attained the age of 16 years, or attempts to do so, shall be fined under this title, imprisoned not more than 10 years, or both.

18 U.S.C. § 1470. Section 2422(b) provides:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

protection from other inmates that posed a threat during yard call was a factor they had to consider. *Id.* Thus, Sergeant Nobles stated that yard call was offered to Plaintiff under protective circumstances. *See* Ex. 24 to Motion [79]. Sergeant Taylor stated that Plaintiff was always allowed yard call, but would sometimes refuse. *See* Ex. 23 to Motion [79]. Sergeant Taylor recalls Plaintiff in attendance at yard call on several occasions. *Id.*

In addition, Defendants submitted the affidavit of Dr. Sherri Dawn Flax. *See* Ex. 21 to Motion [79]. Dr. Flax states that she reviewed and evaluated the Plaintiff's medical records. Dr. Flax observed that Plaintiff did not gain weight while incarcerated at the Jail, but actually lost three pounds. She stated that based on the medical records, there was no evidence of significant cardiovascular disease, which is accelerated in diabetics without proper management. Dr. Flax opined that Plaintiff's general health was not compromised by his diabetic care, and that his diabetes was well-treated and controlled during his incarceration. *Id.*

In his declaration, Plaintiff states that during the twelve months he was incarcerated at the Jail, he was only given outdoor recreational time fives for one hour each. Pl's Decl. [82-2] at 4. He "vigorously disputes the orchestrated affidavits of Nobles and Taylor." Pl's Response [85] at 9. He disputes the claim that the nature of his charges posed a threat by other inmates and disputes that he was in protective custody. Plaintiff also disputes the affiants' "excuse" that weather was a factor in allowing inmates yard call. However, he does admit to refusing yard call once because of the blisters on his feet. Finally, Plaintiff disputes Dr. Flax's affidavit, and disagrees that his diabetes was well-taken care of during his incarceration at the Jail; instead, Plaintiff claims that his condition worsened. Pl's Decl. [82-2].

In support of his argument, Plaintiff attaches his personal diary/log, which covers

---

18 U.S.C. § 2422(b).

approximately four of his ten months incarceration at the Jail.[21]  *See* Exs. 19 - 43 to Pl's

Response [82-2].  During this four month span (February 18, 2008 - June 24, 2008), Plaintiff's

diary entries reflect that he did not get yard call on 102 days.[22]  Plaintiff's diary reflects that he

was offered yard call on seven days during the four-month time span: March 14, 2008, March

24, 2008, April 30, 2008, May 6, 2008, May 21, 2008, June 5, 2008, and June 9, 2008.[23]

However, Plaintiff states that although it was offered, he did not go to yard call on March 24,

2008, June 5, 2008, or June 9, 2008 because he was feeling bad.  *Id.*

    As Plaintiff is challenging the denial of adequate yard call as a general condition,

practice, rule, or restriction of pretrial confinement, the court will apply the *Bell* test.  *See supra*,

*Mayfield,* 1996 WL 670432, at *5; *Hare*, 74 F.3d at 643; *Grabowski*, 47 F.3d at 1392.  Under the

reasonable relationship test set forth in *Bell v. Wolfish*, 441 U.S. 520 (1979), "a pretrial detainee

cannot be subjected to conditions or restrictions that are not reasonably related to a legitimate

governmental purpose."  *Hare*, 74 F.3d at 640.

    Based on the submissions of the parties, there is no evidence the Jail's restrictions to yard

call were not reasonably related to a legitimate governmental purpose.  *See Mayfield,* 1996 WL

670432, at *5-*8 (applying *Bell* test and dismissing pretrial detainee's claim for denial of

adequate recreation as frivolous).  The Defendants' affidavits reflect that inmates, including

Plaintiff were offered yard call twice a week, subject to such factors as weather, overcrowding/

---

[21]Plaintiff claims his papers pre-dating February 2008 were confiscated during a shakedown.  Tr. [62] at 27.

[22]On two of these days, Plaintiff's diary reflects that he was in court, and on one day he was transferred to Pearl River County Jail.  On some days, there is no mention of yard call one way or the other.

[23]Plaintiff's daily diary contradicts his statement that he was only given outdoor recreation five times during his entire ten-month incarceration at the Jail.

understaffing, and Jail security. *See* Exs. 21-24 to Motion [79]; *see also Hare,* 74 F.3d at 646

(stating that jail officials are given wide deference in application of *Bell* test). The fact that

Plaintiff disagrees with the Jail officials reasoning does not create a genuine issue of material

fact. Even Plaintiff's personal diary establishes that he was offered yard call at least once a

month during a four-month time span. *See Exs.* 19-43 to Response [82-2]. Although the diary

reflects that he was not offered yard call in February, he admits that the weather was bad in

January and February. *See* Pl's Decl. [82-2] at 4. There is simply no competent summary

judgment evidence that the restrictions on Plaintiff's yard call amounted to punishment. *See*

*Mayfield*, 1996 WL 670432, at *6-*8.

Because Plaintiff alleges specific denials of yard call by Officers Nobles, Taylor, and

Roper, the court will also address his claims as these Jail officials' episodic acts. Even assuming

that Plaintiff had established that he was denied adequate exercise opportunities, he has failed to

establish that these Defendants acted with the requisite subjective deliberate indifference. *See*

*Hare,* 74 F.3d at 643) (adopting a standard of subjective deliberate indifference as the measure

of culpability for pretrial detainees' claims of episodic acts or omissions); *Edward*, 209 F.3d at

778. Other than Plaintiff's conclusory statement that these Defendants knew of his health

condition yet still ignored or refused his requests for yard call, he has offered no competent

summary judgment evidence to raise a genuine issue of material fact as to whether these

Defendants were deliberately indifferent to his requests. In his daily diary spanning four months,

he only references Officer Taylor three times with respect to yard call, and makes no mention of

the other officers. *See* Exs. 19 - 43 to Pl's Response [82-2]. On June 4, 2008, Plaintiff's log

states that he asked Officer Taylor to go out to yard call and he said he was too busy. Ex. 39 to

Pl's Response [82-2]. However, Plaintiff's log entry for the next day indicates that Officer

Taylor came in to offer him yard call, but he was feeling bad and did not go. *Id.* On June 17, 2008, Plaintiff's log entry states that Officer Taylor "said he was going to give us a yard call and never came back in." Ex. 41 to Pl's Response [82-2]. Further, Plaintiff's testimony at the *Spears* hearing supports the reasons given by the officials. For example, Plaintiff claims that when he would ask the guards about yard call, they would reply that they were "too busy" or "[didn't] have enough people on staff." Tr. [62] at 17. These allegations, even taken as true, do not demonstrate deliberate indifference.

Accordingly, Defendants are entitled to summary judgment on this claim.

**Denial of Access to Law Library**

Plaintiff alleges a claim for denial of access to the law library against Defendants Ron Taylor and Glen Nobles. He claims that this denial prevented from doing research and assisting his court-appointed counsel with his defense in his criminal case. Although he testified that he had no legal training or background, he claims the outcome of his criminal case would have been different had he been granted access to the law library. *See* Tr. [62] at 11-15.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries *or* adequate assistance from persons trained in the law." *Degrate v. Godwin*, 84 F.3d 768, 768-69 (5th Cir. 1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)); *see also Caraballo v. Fed. Bureau of Prisons*, 124 Fed. Appx. 284, 285 (5th Cir. 2005) (holding that because plaintiff had court-appointed counsel, he had no constitutional right of access to the law library to help prepare his defense, and therefore failed to state a claim upon which relief may be granted).

Because Plaintiff was represented by court-appointed counsel during the time of the

alleged deprivation, he had no constitutional right of access to the law library. Tr. [62] at 12; *see Degrate*, 84 F.3d 768-69; *Caraballo*, 124 Fed. Appx. at 285. Further, Plaintiff failed to allege a "relevant actual injury" caused by the alleged denial of access to the law library. *See Lewis v. Casey*, 518 U.S. 343, 349-52 (1996) (citation omitted) (stating that in order to prevail on an access-to-the-courts claim, plaintiff must show an "'actual injury' - that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim'"); s*ee also Donnelly v. Edwards*, 95 Fed. Appx. 702, 703 (5th Cir. 2004) (upholding dismissal of access-to-the-courts claim because plaintiff did not establish that he was unable to proceed in a court case as a result of alleged delays and denials of legal assistance); *Cartner v. Lowndes County*, 89 Fed. Appx. 439, 442 (5th Cir. 2004) (affirming dismissal of access-to-the-courts claim where plaintiff failed to explain "how his position as a litigant was adversely affected").

Accordingly, Defendants are entitled to summary judgment on this claim.

**Destruction of Legal Property**

Plaintiff alleges a claim for the destruction of legal property against Defendants Sergeant Corley, Officer Zach Rooke, Officer Joe Joseph, Sergeant Jamie Fantroy, Officer Perry Price, and Jon Officer Girod. Specifically, he claims that these Defendants were involved in a shakedown where his legal property was confiscated and never returned. Plaintiff testified that Officer Price, Officer Girod, and Sergeant Jamie were the ones who actually seized his property, the others were just present during the shakedown. *See* Tr. [62] at 25-31.

In their affidavits, Officer Fantroy, Officer Price, Officer Rooke, and Officer Corley deny that they ever took any of Plaintiff's legal property during a shakedown or otherwise, and Officers Rooke, Price, and Fantroy state that they have never seen, and have no knowledge that

Jon Girod ever took Plaintiff's legal property.  *See* Exs. 25-27, 31 to Motion [79].  Defendants further claim they are entitled to judgment as a matter of law since an adequate post-deprivation remedy exists.

"Under the *Parratt/Hudson* doctrine, a state actor's random and unauthorized deprivation of a plaintiff's property does not result in a violation of procedural due process rights if the state provides an adequate postdeprivation remedy."  *Alexander v. Ieyoub*, 62 F.3d 709, 712 (5th Cir. 1995); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984);  *Parratt v. Taylor*, 451 U.S. 527, 541-44 (1981), overruled in part by *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).  The *Parratt/Hudson* doctrine applies when: "(1) the deprivation was unpredictable or unforeseeable; (2) predeprivation process would have been impossible or impotent to counter the state actors' particular conduct;  and (3) the conduct was unauthorized in the sense that it was not within the officials' express or implied authority."  *Smith v. Epps*, 326 F. App'x 764, 765 (5th Cir. 2009). This doctrine applies whether the random unauthorized deprivations of property were negligent or intentional.  *Daniels*, 474 U.S. at 328; *Hudson*, 468 U.S. at 533.  However, conduct is not considered "random and unauthorized" for purposes of the *Parratt/Hudson* doctrine if the state "delegated to [the defendants] the power and authority to effect the very deprivation complained of."  *Allen v. Thomas*, 388 F.3d 147, 149 (5th Cir. 2004) (quoting *Zinermon v. Burch*, 494 U.S. 113, 138 (1990)).

Plaintiff has not alleged that the deprivations were made in accordance with any policy, practice or custom or were in any other way "authorized."  *See Smith*, 326 Fed. App'x at 765. Accordingly, the *Parratt/Hudson* doctrine bars Plaintiff's property deprivation claims under Section 1983.  *See Sossamon v. Williams*, 270 F. App'x 323, 325 (5th Cir. 2008) (holding that prisoner's claim was barred by the *Parratt/Hudson* doctrine where there was no genuine issue

whether the officer's actions were random and unauthorized and where prisoner had an adequate post-deprivation remedy for the destruction of his property); *Leggett v. Comer*, 280 F. App'x 333, 335 (5th Cir. 2008) (affirming dismissal of prisoner's claim that defendants intentionally failed to comport with prison policy to inventory and secure his property, reasoning that "the *Parratt/Hudson* doctrine explicitly applies to the unauthorized, intentional deprivation of property by a state employee"); *Leggett v. Williams*, 277 F. App'x 498, 500 (5th Cir. 2008); *Carmona v. Branstuder*, 68 F.3d 470, 1995 WL 581807, at *1 (5th Cir. Sept 18, 1995) (dismissing prisoner's property deprivation claim, finding that the deprivation of property was at most, a random act, and prisoner had an adequate state remedy).

Moreover, Mississippi provides post-deprivation remedies for both negligent and intentional conversions of property. *See*, *e.g.*, Miss. Code Ann. § 11-38-1 *et seq.* (claim and delivery); Miss. Code Ann. § 11-37-101 *et seq.* (replevin). It is Plaintiff's burden to establish that these post-deprivation remedies are not adequate. *Myers*, 97 F.3d at 94-95 (citations omitted). Plaintiff has failed to allege, must less provide any evidence, that these remedies are not adequate. Moreover, the Fifth Circuit has held that "Mississippi's post-deprivation remedies for civil IFP litigants satisfy due process." *Nickens v. Melton*, 38 F.3d 183, 185 (5th Cir. 1994). Thus, Plaintiff's remedy lies not in a Section 1983 action, but in a tort claim under state law. Defendants are entitled to judgment as a matter of law on this claim.

### Violation of Freedom of Religion

Plaintiff alleges a claim against Defendants Ron Taylor and Glen Nobles for the violation of his First Amendment rights. Specifically, he claims that these Defendants denied or ignored his verbal requests to attend non-denominational religious services held at the Jail.

This court reviews Plaintiff's First Amendment claim under the standard set forth by the

Supreme Court in *Turner v. Safley*: whether the regulation is "reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987); *see also Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599, 607 (5th Cir. 2008). In determining the reasonableness of the prison regulation, we consider the following four factors:

> (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation ... will have on guards and other inmates, and on the allocation of prison resources generally"; (4) whether there are "ready alternatives that could fully accommodate[ ] the prisoner's rights at *de minimis* cost to valid penological interests."

*Mayfield*, 529 F.3d at 607 (quoting *Turner*, 482 U.S. at 89-91). The *Turner* standard "also includes a neutrality requirement-'the government objective must be a legitimate and neutral one ... [and] [w]e have found it important to inquire whether prison regulations restricting inmates' First Amendment rights operated in a neutral fashion.'" *Mayfield*, 529 F.3d at 607 (quoting *Turner*, 482 U.S. at 90).

"A prisoner's First Amendment rights may be circumscribed when legitimate penological objectives such as institutional order and security outweigh the concerns associated with preservation of the inmate's right." *Schmidt v. Johnson*, 75 Fed. Appx. 218, 220 (5th Cir. 2003). Moreover, prison officials are afforded great deference in making decisions regarding jail security. *Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir. 2002).

In their Motion [79][80], Defendants submit that religious leaders are in and out of the Jail on a regular basis and that religious services are held. Defendants submit that religious leaders come to the Jail every Tuesday night and go into each individual cell block, and that religious leaders come to the Jail and hold a group service every Wednesday. *See* Memo. [80] at 23. Defendants aver that Plaintiff had the option to participate in any religious service offered at

the Jail, and that Defendants Taylor and Nobles never denied the Plaintiff access to religious services. Defendants further claim that Plaintiff never filed a complaint or request regarding religious services. Indeed, the Defendants recall that the Plaintiff attended religious services on several occasions as stated in their Affidavits. *See* Exs. 23-24 to Motion [79].

In his Declaration opposing the motion, Plaintiff admits he was visited by a "religious leader," but apparently disputes his credentials. *See* Pl's Decl. [82-2]. He also claims he was never allowed to go to group services on Wednesday nights.

There is no credible evidence to suggest that Plaintiff was ever denied the opportunity to attend religious services. In any event, the court concludes that Plaintiff was not prevented from exercising his religious beliefs. The evidence reflects that Plaintiff was visited by a religious leader, regardless of whether Plaintiff approved of his credentials. Moreover, there is no evidence to suggest Plaintiff was prevented from praying or worshiping in his cell. *See Baranowski v. Hart*, 486 F.3d 112, 121 (5th Cir. 2007) (granting summary judgment in favor of Defendants on prisoner's religion claims, reasoning that "despite being denied weekly Sabbath services and other holy day services when a rabbi or approved volunteer is not present, Baranowski retains the ability to participate in alternative means of exercising his religious beliefs, including the ability to worship in his cell using religious materials and the ability to access the chapel and lockers containing religious materials on certain days and times"). Accordingly, Defendants are entitled to summary judgment on this claim.

**Qualified Immunity**

Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant is entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing

*Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee,* 195 F.3d 234, 236 (5th Cir. 1999).   Because the court finds that the Plaintiff's claims are not cognizable as constitutional claims, it need not reach the question whether the Defendants are entitled to qualified immunity.  *Wells*, 45 F.3d at 93.

CONCLUSION

For the reasons stated above, the court finds that Defendants' Motion for Summary Judgment [79] should be granted.  Accordingly,

IT IS, THEREFORE, ORDERED:

1.  That Defendants' Motion for Summary Judgment [79] is GRANTED and that this action is dismissed with prejudice.

2.  That Defendants' Motion to Strike is DENIED as moot.

3.  A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 4th day of February, 2010.

s/ Michael T. Parker
United States Magistrate Judge